AUSTIN WALES *vs.* THE PRESIDENT, DIRECTORS AND COMPANY OF
THE BANK OF MICHIGAN.

First Circuit. The allegations in a bill upon demurrer are taken to be true.

Wales.
*vs.*
Bank of
Michigan.

Where a note for $1000 was made payable at the Bank of Michigan and other notes were turned out by the maker to secure the endorser of the $1000 note, with the understanding and agreement that the notes so turned out should be placed in the bank for collection, and when a sufficient amount should be collected on the notes so turned out to · pay the $1000 note, the same should be applied in payment thereof; it *was held* that it came fairly within the scope of the powers of the officers of the bank, as one of the most ordinary transactions of taking security for a debt.

When the defendant is ignorant of the facts which constitute his defence at law pending the suit, or that the defence could not have been set up, as a defence at law; it forms an exception to the rule that equity will not interfere to relieve against a judgment at law.

The bill in this case states that complainant endorsed for the sole benefit and accommodation of one Wessel Whitaker, a note made by him dated July 5th, 1837, payable ninety days after date to the order of E. T. Clark and Isaac O. Adams, at the Bank of Michigan for the sum of $1000. That the note was endorsed by Clark & Adams as first endorsers, and Whitaker delivered to complainant to secure the complainant for endorsing, one note for $600 or thereabouts and another note for $1,391 36, with authority to collect a sufficient amount on these notes to indemnify complainant for his endorsement. That this agreement was communicated to E. P. Hastings, President of the Bank of Michigan; and the notes were placed in his hands to be so collected and applied. Complainant was sued on his endorsement, and May 1st, 1839 judgment was rendered against him for $1,131 21, and fi. fa. was issued thereon. That after the fi. fa. had been issued, upon inquiry at the bank, complainant ascertained that the note for $600 had been collected, and the amount had not been applied. That the bank had let Theodore Romeyn have the $1,391 36 note and had taken from him an agreement to pay the amount due thereon in sixty days, to which agreement complainant never assented.

The bill prayed for a perpetual injunction, and for a release and discharge of the judgment against complainant and for other relief.

To this bill the defendants demurred.

JOY & PORTER in support of the demurrer, cited 6 *Peters* 51 ; 1 *Johns Ch.* 49, 320, 465 ; 2 *Id.* 228.

D. GOODWIN, contra, cited 5 *Peters* 99.

THE CHANCELLOR—The grounds taken in support of the demurrer are these :

*First.* That Mr. Hastings, then President of the bank was acting as the agent of Wales, and not in behalf of the bank.

The question now presented is, upon demurrer, by which the allegations in the bill for the purpose of this decision must be taken to be true.

The allegation is, that the notes which were held as collateral security " were placed by the complainant in the bank with the said President thereof, to be by the said President, Directors and company used, held, collected and applied as before mentioned ; that is, for the purpose of paying the note of Whitaker, of which Wales was indorser.

It further appears that one of the notes of about $600, so deposited, has been collected, and that the proceeds have not been applied to the payment of the note indorsed by Wales.

That the other note has been given up by the then President of the bank, upon the undertaking of another individual to pay to the bank the amount of Whitaker's note, upon which Wales was endorser.

Under these allegations uncontradicted, it would seem that these securities have been treated throughout as a part of the security, on which the bank relied for the payment of this note, and that it comes fairly within the scope of the powers of the officers of the bank ; it was one of the most ordinary transactions, to wit, taking security for a debt.

The fact that one of the notes has been collected and the proceeds not applied as was agreed, and that the bank is still proceeding to collect the entire judgment must be fatal to a general demurrer, unless it can be sustained on other grounds.

*Second.* The other ground in support of the demurrer is, that this complainant comes too late. That he should have made his defence at law.

The rule on this subject is very rigid, and should be adhered to. But this seems to me to come within the excepted cases.

The rule laid down in *Lansing* vs. *Eddy*, 1 *Johns Ch.* 51, is stated by Chancellor Kent to be, that this court will not relieve against a judgment at law on the ground of its being contrary to equity, unless the defendant below was ignorant of the fact in question, pending the suit, or it could not have been received as a defence. This relief is often also refused where the party has been guilty of negligence.

The allegation here is, that the complainant confidently relied and expected the defendant would collect and apply the proceeds of these notes to the payment of the note of Whitaker, on which he was endorser, and did not know or suspect he had any legal defence until after the judgment was rendered, when he for the first time learned that one of the notes had been collected, but the proceeds had not been applied; and that the other had been transferred upon the understanding of a third person to pay this identical note, upon which the judgment is rendered against him as endorser.

The circumstances were well calculated to lull the complainant into security. But for these transactions of the defendants, there was no defence to the note; of these he knew nothing until after the judgment was rendered, the complainant, relying, as he says, that the money would be collected upon the collateral notes to pay off this liability.

The demurrer must be overruled with leave to answer,

Demurrer overruled.